UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| HARRISON KERR TIGRETT, MAXINE SMITH, RUSSELL SUGARMON, REGINA M. SUGARMON, JAMES WESLEY GIBSON, II, KATHY BUCKMAN GIBSON, MIKE CARPENTER, and MARTAVIUS JONES,<br><br>        Plaintiffs,<br><br>v.<br><br>ROBERT E. COOPER, JR., in his official capacity as Attorney General of the State of Tennessee, TRE HARGETT, in his official capacity as Secretary of State of the State of Tennessee, TENNESSEE DEPARTMENT OF STATE: DIVISION OF ELECTIONS, SHELBY COUNTY ELECTION COMMISSION, WILLIAM GIANNINI, MYRA STILES, J.H. JOHNSON, ROBERT D. MEYERS, and STEVE STAMSON, in their official capacities as members of the Shelby County Election Commission,<br>        Defendants. | No. 2:10-cv-02724-STA-tmp |

## ORDER DENYING MOTION TO DISMISS

Before the Court is Defendants' Motion to Dismiss (D.E. # 31), filed on November 10, 2010. For the reasons set forth below, the Motion is **DENIED**.

### BACKGROUND

On October 7, 2010, Plaintiffs filed their Complaint for Declaratory, Preliminary, and Permanent Injunctive Relief. (D.E. # 1.) The Plaintiffs' factual allegations are as follows. On

1

August 26, 2009 and September 15, 2009, the City of Memphis ("Memphis") and Shelby County, Tennessee ("Shelby County"), respectively, adopted a resolution establishing the Memphis & Shelby County Metropolitan Government Charter Commission ("Charter Commission"). Compl. ¶ 20. The Charter Commission was established to write and propose a charter for a metropolitan government in Shelby County. (*Id.*) On August 9, 2010, the Charter Commission adopted the Charter of the Memphis Shelby County Metropolitan Government ("Charter"). On August 10, 2010, the Charter Commission then filed this Charter with the Shelby County Election Commission ("Election Commission"), requesting that the Charter and the name of the new government be placed on a ballot to be presented to the voters of Memphis and Shelby County in a referendum election to be held on November 2, 2010. (*Id.* ¶ 21.)

In their Complaint, Plaintiffs show that in 1953, the Constitution of the State of Tennessee was amended to provide as follows:

> The General Assembly may provide for the consolidation of any or all of the governmental and corporate functions now or hereafter vested in municipal corporations with the governmental and corporate functions now or hereafter vested in the counties in which such municipal corporations are located; provided, such consolidations shall not become effective until submitted to the qualified voters residing within the municipal corporation and in the county outside thereof, and approved by a majority of those voting within the municipal corporation and by a majority of those voting in the county outside the municipal corporation.

Tenn. Const. art. XI, § 9. Further, Plaintiffs highlight the enabling legislation, Tennessee Code Annotated § 7-2-106(b)-(d), for this constitutional amendment. Specifically, Plaintiffs provide in relevant part as follows:

> (b) The special referendum election shall be held on a date fixed by the county election commission not less than eighty (80) days nor more than one hundred (100) days subsequent to the filing of the charter as provided in § 7-2-105. Notice of the referendum election shall be given as required in other elections on questions

>submitted to the vote of the people. The date of the election and the form of ballot shall be uniform throughout the entire county, but the county election commission shall canvass the returns and certify the results as if separate elections were being held for the principal city and for the area of the county outside of the principal city of the county. For the purpose of determining whether the proposed charter has been accepted or rejected, the county election commission shall canvass the returns and certify the results:
>
>>(1) For the principal city; and
>>
>>(2) For the entire area of the county outside of the principal city, including in such area the smaller cities, if any, within the county.
>
>(c) The proposed charter shall be deemed ratified and adopted if the proposed charter is approved by a majority of those voting within the principal city and also a majority of those voting in the county outside of the principal city.
>
>(d) The proposed charter shall be deemed rejected and shall not become effective if it is disapproved by a majority of those voting in the principal city. The proposed charter shall also be deemed rejected and shall not become effective if it is disapproved by a majority of those voting in the county outside of the principal city.

Tenn. Code Ann. § 7-2-106(b)-(d).

Pursuant to the above state constitutional and statutory provisions, Plaintiffs note that the Charter cannot be adopted by the voters of Memphis and Shelby County unless it is approved by both a majority of qualified voters residing in Memphis and a separate majority of qualified voters residing in Shelby County, outside of Memphis ("dual-majority voting requirement"). Compl. ¶ 24.

Plaintiffs note that in both 1962 and 1971, pursuant to Article XI, Section 9 of the Tennessee Constitution, a referendum election was held to form a metropolitan government in Shelby County. (*Id.* ¶ 25.) In both elections, the referendum failed outside of Memphis. (*Id.*)

In the Complaint, Plaintiffs allege that approximately seventy three percent (73%) of Shelby County residents reside in Memphis while the remaining twenty seven percent (27%) of

Shelby County residents reside outside of Memphis.  (*Id.* ¶ 26.)  Moreover, Plaintiffs further allege that as a resulting effect, the votes of the residents of Shelby County residing outside of Memphis are weighted proportionally at a ratio of 2.5:1 to the votes of residents of Memphis.  (*Id.* ¶ 27.)  Based on these factual allegations, Plaintiffs assert that these voting procedures, i.e. the dual-majority voting requirement, result in *prima facie* discrimination in the election process and enhance the opportunity for intentional discrimination.  (*Id.* ¶ 28.)

Following, Plaintiffs ask this Court to declare the dual-majority voting requirement in violation of the one person, one vote principle of the Fourteenth and Fifteenth Amendments in that it impermissibly dilutes the voting strength of voters residing in Memphis and the voting strength of African-American voters residing in Memphis in countywide consolidation elections.  (*Id*. ¶ 13-14.)  Plaintiffs further ask this Court to declare that the dual-majority voting requirement to be in violation of Section 2 of the Voting Rights Act of 1965 in that it impermissibly dilutes the voting strength of African-American voters residing in Memphis in countywide consolidation elections.  (*Id.* ¶ 14.)  Additionally, Plaintiffs ask this Court to enjoin the Election Commission from canvassing and counting the referendum vote in accordance with the current dual-majority voting requirement and order that the vote be counted collectively on a countywide basis and that the results be certified by the Secretary of State as the results of one Shelby County election.  (*Id.*)

On October 20, 2010, this Court, with the consent of all parties, issued a Consent Preliminary Injunction enjoining the Election Commission from certifying the results of the referendum vote.  (D.E. # 27.)  The Court further detailed that the Election Commission was to

preserve all of the voting information and the voting results until further orders of this Court. To date, this injunction is still in place.

Defendants filed this current Motion asking this Court to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Specifically, in support of their Motion, Defendants argue that Plaintiffs' cause of action is moot and, consequently, should be dismissed. Defendants note that:

> The referendum election was [] held on November 2, 2010. According to the [] Election Commission's unofficial vote totals, 84.96% of the voters in Shelby County voted against the consolidation referendum while only 15.04% voted in favor of the consolidation referendum. With respect to the vote total in [] Memphis, 49.17% of the voters in [Memphis] voted against the consolidation referendum, while 50.83% voted in favor of the referendum. Thus, pursuant to the provisions of Article XI, Section 9 and Tenn. Code Ann. § 7-2-106(d), the proposed charter is deemed rejected and shall not become effective. Furthermore, even under the collective vote results the proposed charter would still be deemed rejected as the countywide votes *against* the consolidation referendum total 142,721 while the countywide voters in *favor* of the referendum only total 81,574.

Mem. of Law in Supp. of Defs.' Mot. to Dismiss, 5. Additionally, Defendants argue that even if Plaintiffs' complaint is not moot, the Plaintiffs are not entitled to the remedy they seek because of the principles of federalism.

## ANALYSIS

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[1] However, a case is not considered moot if the challenged activity is "capable of repetition, yet evading review."[2] This exception applies when "(1) the

---

[1] *Lawrence v. Blackwell*, 430 F.3d 368, 370 (6th Cir. 2005) (citations omitted).

[2] *Id.* at 371 (citations omitted).

5

challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."[3]  The party asserting this exception bears the burden of establishing both prongs.[4]  Plaintiffs argue that the exception applies in the present case.

As to the first prong of the test, the Sixth Circuit has noted that "[c]hallenges to election laws are one of the quintessential categories of cases which usually fit this prong because litigation has only a few months before the remedy sought is rendered impossible by the occurrence of the relevant election."[5]  Further, the Sixth Circuit has additionally opined that "[l]egal disputes involving election laws almost always take more time to resolve than the election cycle permits."[6]  For example, in *Libertarian Party of Ohio v. Blackwell*, the Sixth Circuit found the first prong of the test "easily satisfied" when less than eleven (11) months had elapsed between the filing of the lawsuit and the occurrence of the election.[7]  Additionally, in

---

[3] *Id.* (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). See also *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 735 (2008) (This "exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.").

[4] *Id.*

[5] *Lawrence*, 430 F.3d at 371 (citing *Morse v. Republican Party of Va.*, 517 U.S. 186, 235 (1996); *Norman v. Reed*, 502 U.S. 279, 287-88 (1992); *Speer v. City of Oregon*, 847 F.3d 310, 311 (6th Cir. 1988)).

[6] *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (citing *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969); *Lawrence*, 430 F.3d at 371)).

[7] *Id*.

*First National Bank of Boston v. Bellotti*[8], the Supreme Court determined that the "capable of repetition, yet evading review" exception applied, finding that eighteen (18) months was insufficient time to obtain judicial review.[9]

In the present case, the time period between when the Charter Commission filed the Charter with the Election Commission and when the actual election took place was less than three (3) months. Consequently, following Supreme Court and Sixth Circuit precedent, the Court finds that the first prong is easily met. The Court adds that this first prong would still be met even if the Court calculated the time period from when the Charter Commission was established to when the actual election took place, as the duration of that time period was less than fourteen (14) months.

The second prong of the exception is met if "there is a reasonable expectation that the same complaining party would be subjected to the same action"[10] or the same "alleged illegality"[11] again. The Sixth Circuit and, notably, both parties in this case have stated that this standard is "somewhat relaxed" in election cases.[12] The Sixth Circuit, in a 2005 election case, highlighted that "[t]he Supreme Court has stated that the purpose of the second prong is to

---

[8] 435 U.S. 765 (1978).

[9] *Id.* at 774 ("[T]he period of time between legislative authorization of the proposal and its submission to the voters was approximately 18 months. This proved too short a period of time for appellants to obtain complete judicial review, and there is every reason to believe that any future suit would take at least as long.").

[10] *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 735 (2008).

[11] *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 463 (2007).

[12] *Libertarian Party of Ohio*, 462 F.3d at 585. See *Gawry v. Countrywide Home Loans, Inc.*, 395 F. App'x 152, 158 n.5 (6th Cir. 2010); *Lawrence*, 430 F.3d at 372.

determine 'whether the controversy was *capable* of repetition and not . . . whether the claimant had demonstrated that a recurrence of the dispute was more probable than not.'"[13] Additionally, in that case, the Sixth Circuit added that "[e]ven if the court could not reasonably expect that the controversy would recur with respect to [the Plaintiffs], the fact that the controversy almost invariably will recur with respect to some future potential candidate or voter [] is sufficient to meet the second prong."[14]

Here, at this stage in the litigation, accepting the affidavits provided by the Plaintiffs as proof that efforts to again seek a referendum vote on a metropolitan form of government are under consideration and even likely, the Court finds that there is a reasonable expectation that this controversy will recur in the future. Therefore, the Court finds that this second prong is also

---

[13] *Lawrence*, 430 F.3d at 371 (quoting *Honig v. Doe*, 484 U.S. 305, 319 n.6 (1988)). But see *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) ("The Court has never held that a mere physical or theoretical possibility was sufficient to satisfy the test stated in *Weinstein*. If this were true, virtually any matter of short duration would be reviewable. Rather, we have said that there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party."). Interestingly, in the footnote in *Honig*, the Supreme Court, discussing Justice Scalia's dissent in the case, stated:

> We believe the dissent overstates the stringency of the "capable of repetition" test. Although Justice Scalia equates "reasonable expectation" with "demonstrated probability," the very case he cites for this proposition described these standards in the disjunctive, [*Murphy v. Hunt*], and in numerous cases decided both before and since *Hunt* we have found controversies capable of repetition based on expectations that, while reasonable, were hardly demonstrably probable.

*Honig*, 484 U.S. 305, 319 n.6 (1988). Neither *Honig* nor *Murphy* were election cases.

[14] *Lawrence*, 430 F.3d at 372. Interestingly, in his dissent mentioned above, Justice Scalia also stated that "some of our election law decisions differ from the body of our mootness jurisprudence . . . in dispensing with the same-party requirement entirely, focusing instead upon the great likelihood that the issue will recur *between the defendant and the other members of the public at large* . . . ." *Honig*, 464 U.S. at 335-36 (Scalia, J., dissenting).

met.  Consequently, this case falls within the exception to the mootness doctrine, and the Court finds that this case is not moot.

At this point, having found that the controversy is not moot, the issue of federalism and its application need not be addressed.

While the Court has found that the case is not moot, the Court does find that one of the remedies requested is now moot.  As mentioned above, Plaintiffs, in their Complaint, requested, among other relief, that this Court enjoin the Election Commission from canvassing and counting the referendum vote in accordance with the current dual-majority voting requirement and order that the vote be counted collectively on a countywide basis and that the results be certified by the Secretary of State as the results of one Shelby County Election.  Pursuant to parties' consent, this Court entered the preliminary injunction.  The Court now finds, however, that after the November 2, 2010 election this one specific request for relief is moot.  Thus, the Court now lifts the preliminary injunction currently in place and, as a result, the November 2, 2010 election results may be certified.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: February 16, 2011.