**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

| | |
|---|---|
| **HARRISON KERR TIGRETT** | ) |
| **MAXINE SMITH, RUSSELL** | ) |
| **SUGARMON, REGINA M.** | ) |
| **SUGARMON, JAMES WESLEY** | ) |
| **GIBSON II, KATHY BUCKMAN** | ) |
| **GIBSON, MIKE CARPENTER, and** | ) |
| **MARTAVIOUS JONES,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **ROBERT E. COOPER, JR., in his** | ) |
| **Official Capacity as Attorney General of** | ) |
| **the State of Tennessee, TRE HARGETT,** | ) |
| **in his Official Capacity as Secretary of** | ) |
| **State of the State of Tennessee,** | ) |
| **TENNESSEE DEPARTMENT OF** | ) |
| **STATE: DIVISION OF ELECTIONS,** | ) |
| **SHELBY COUNTY ELECTION** | ) |
| **COMMISSION, WILLIAM GIANNINI,** | ) |
| **MYRA STILES, J.H. JOHNSON,** | ) |
| **ROBERT D. MEYERS, and STEVE** | ) |
| **STAMSON, in their official capacities as** | ) |
| **members of the Shelby County Election** | ) |
| **Commission,** | ) |
| | ) |
| **Defendants.** | ) |

No.10-2724-STA-tmp

---

**ORDER DENYING SUBURBAN MUNICIPALITIES' MOTIONS TO INTERVENE**

---

Before the Court are the Town of Arlington's Motion to Intervene (D.E. # 42), filed on

March 29, 2011, and a Motion to Intervene (D.E. # 53) filed on June 6, 2011, by the City of

Bartlett, the Town of Collierville, the City of Germantown, and the City of Millington.  Plaintiffs

1

filed a Response in Opposition to Town of Arlington's Motion to Intervene on April 15, 2011

(D.E. # 46), and they opposed the Motion filed by the City of Bartlett, the Town of Collierville,

the City of Germantown, and the City of Millington on June 22, 2011 (D.E. # 54.)  The Town of

Arlington filed a Reply on May 5, 2011 (D.E. # 52), and the City of Bartlett, the Town of

Collierville, the City of Germantown, and the City of Millington filed a Reply on July 8, 2011

(D.E. # 60).  The Court will refer to the Town of Arlington, the City of Bartlett, the Town of

Collierville, the City of Germantown, and the City of Millington as the "Suburban

Municipalities."  For the following reasons, the Suburban Municipalities' Motions to Intervene

are **DENIED**.

## BACKGROUND

Plaintiffs' lawsuit relates to the consolidation of the Shelby County government with the

government of the City of Memphis to form a metropolitan government.  (Town of Arlington's

Mem. in Supp. of Mot. to Intervene, D.E. # 42-1, at 2.)  Plaintiffs' Complaint alleged that

Tennessee constitutional and statutory law requiring the adoption of a metropolitan government

by a dual majority vote is unconstitutional under the Fourteenth and Fifteenth Amendments to

the United States Constitution.  (*Id.*)  Moreover, Plaintiffs asserted an as-applied challenge  to

the constitutionality of the dual majority voting requirement under Section 2 of the Voting

Rights Act of 1965.  (*Id.*)

The Court issued a Consent Preliminary Injunction enjoining the Election Commission

from certifying the results of the referendum vote.  (D.E. # 27.)  On November 2, 2010, a

countywide consolidation referendum was held, and the referendum did not pass.  (*Id.*)  After

Defendants filed a Motion to Dismiss on November 10, 2010, arguing that the Plaintiffs' cause

2

of action was moot, the Court issued an Order denying Defendants' Motion, as the Court found

that there was "a reasonable expectation that this controversy w[ould] occur in the future."  (*Id.*)

In its Order, the Court lifted the preliminary injunction and allowed the November 2, 2010,

election results to be certified.  (D.E. # 38 at 9.)  Defendants then filed their Answer on March 9,

2011.  (*Id.* at 3.)

      The Town of Arlington, the City of Bartlett, the Town of Collierville, the City of

Germantown, and the City of Millington, are all municipalities in Shelby County.  The

arguments they put forth in favor of intervention are substantially similar, and they are

represented by the same counsel.  Moreover, the Suburban Municipalities were represented at

the Court's hearing on September 20, 2011, by the same attorneys.  Thus, the Court will address

the Suburban Municipalities' arguments as a group.

      First, the Suburban Municipalities addressed the requirements of Federal Rule of Civil

Procedure Rule 24(a) regarding intervention as of right.[1]  The Suburban Municipalities focused

their arguments on the timeliness of their application for intervention and their "clear"

substantial legal interest in the case while addressing the four elements necessary for

---

[1]      Federal Rule of Civil Procedure 24(a) provides that

    [o]n timely motion, the Court must permit anyone to intervene who: (1) is given
    an unconditional right to intervene by a federal statute; or (2) claims an interest
    relating to the property or transaction that is the subject of the action, and is so
    situated that disposing of the action may as a practical matter impair or impede
    the movant's ability to protect its interest, unless existing parties adequately
    represent that interest.

Neither party argues that there is a federal statute providing for an unconditional right of
intervention.  Consequently, the Court will analyze the parties' intervention as of right
arguments pursuant to Rule 24(a)(2).

3

intervention as of right.  (Town of Arlington's Mem. in Supp. of Mot. to Intervene, D.E. # 42-1, at 4-5.)  First, the Suburban Municipalities noted that their intervention was timely because the suit had not progressed substantially into the merits of the controversy.[2]  (*Id.* at 4; Mem. in Supp. of Mot. to Intervene, D.E. # 53-3, at 5-6.)  Second, the Suburban Municipalities focused on substantial legal interests such as their "rights of annexation, contractual or otherwise, and other corporate and governmental functions the provision and costs of which may be adversely affected."  (Town of Arlington's Mem. in Supp. of Mot. to Intervene, D.E. # 42-1, at 5.)  Additionally, the Suburban Municipalities pointed to the potential for a new charter to undermine their municipal interests, which differ from those of the City of Memphis.  Specifically, they identified their interest in taxation and tax revenues such as the local option sales tax and the possibility of a future countywide charter's change in allocation of powers among the separate governmental entities in a single county.  (Mem. in Supp. of Mot. to Intervene, D.E. # 53-3, at 7-9.)  They also noted their significant legal interest in maintaining "the dual majority requirements [of the Tennessee constitutional and statutory provisions at issue in the case] to prevent dilution or debasement of the votes within [their] jurisdiction[s]."  (Town of Arlington's Mem. in Supp. of Mot. to Intervene, D.E. # 42-1, at 4-5.)

Third, the Suburban Municipalities argued that their ability to protect their interests could be impaired without intervention.  According to them, while Defendants seek merely to defend the constitutionality of the current voting requirements for countywide consolidation, the Suburban Municipalities have individual interests as separate municipalities that Defendants will

---

[2]     Discovery is due on January 31, 2012, and dispositive motions are due on March 5, 2012.

4

not address in their briefs.  (*Id.* at 6.)  These same concerns controlled the Suburban

Municipalities' arguments as to whether Defendants would adequately protect their interest.

(*Id.*)

The Suburban Municipalities then turned to permissive intervention under Rule 24(b).[3]

The Suburban Municipalities submitted that, just as they had a substantial legal interest in the

case, the issues of law "at the heart of this controversy" also related to them.  (Town of

Arlington's Mem. in Supp. of Mot. to Intervene, D.E. # 42-1, at 7.)  According to the Suburban

Municipalities, "the issue of the voting rights requirement for countywide consolidation relates

not only to Plaintiffs and Defendants in this matter but also relates to [the Suburban

Municipalities'] status" as separate municipalities.  (*Id.*)  Additionally, the Suburban

Municipalities asserted that they did not need to demonstrate that they have standing; rather, they

argued that "the issue of voting requirements for county consolidation referenda is related to the

Suburban Municipalities where they are constituent units of Shelby County."  (Mem. in Supp. of

Mot. to Intervene, D.E. # 53-3, at 12.)

In response to the Suburban Municipalities' arguments in favor of intervention as of

right, Plaintiffs noted that the two claims in their complaint are questions that "are purely legal in

nature."  (Pls.' Resp. in Opp'n to Town of Arlington's Mot. to Intervene, D.E. # 46, at 2.)

Moreover, they argued that the Suburban Municipalities' Motions to Intervene were not timely,

---

[3]  Federal Rule of Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact."  Moreover, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

that the Suburban Municipalities did not show that their ability to protect their interests would be impaired, and that the Tennessee Attorney General could not adequately represent their interests. (*Id.* at 3-4, 6-9.) Notably, Plaintiffs stated that "the Suburban Municipalities confuse their political concerns related to consolidation generally with a substantial interest in this litigation, which is solely related to allegedly illegal voting practices." (Pls.' Resp. in Opp'n to Suburban Municipalities' Mot. to Intervene, D.E. # 54, at 5.) Thus, Plaintiffs argued that the Suburban Municipalities did not have a substantial legal interest in the litigation.

With regard to permissive intervention, Plaintiffs asserted that there are no factual issues in dispute and that the Suburban Municipalities would be limited to asserting a common question of law as required for permissive intervention. (Pls.' Resp. in Opp'n to Town of Arlington's Mot. to Intervene, D.E. # 46, at 10.) Plaintiffs focused on the fact that the Suburban Municipalities were trying to intervene to defend the constitutionality of a state statute rather than a municipal ordinance. (*Id.*) They argued that "it is impossible even to discern what 'common question of law' the Suburban Municipalities are asserting other than that the current Consolidation Clause is constitutional." (Pls.' Resp. in Opp'n to Suburban Municipalities' Mot. to Intervene, D.E. # 54, at 9.) Moreover, Plaintiffs noted that, because the Suburban Municipalities' objective is the same as Defendants' in this case, allowing them to intervene would "lead to nothing more than delay and duplicative filings." (*Id.* at 10.)

In reply, the Suburban Municipalities pointed out that a potential intervenor as of right "does not have to have the same standing to initiate or defend a lawsuit where the current plaintiff or defendant has standing." (Reply to Pls.' Resp. in Opp'n to Town of Arlington's Mot. to Intervene, D.E. # 52, at 4.) They also reiterated that their Motions to Intervene were timely,

6

that their ability to protect their individual municipal interests could be impaired without intervention, and that Defendants would not adequately represent the Suburban Municipalities' "separate and distinct interests." (*Id.* at 5, 10-11.) As for their substantial legal interest, the Suburban Municipalities relied on *Town of Lockport v. Citizens for Community Action at Local Level, Inc.*, 430 U.S. 259 (1977), to assert that "the fact that this dispute involves the voting requirements for consolidation does not preclude this Court from considering the distinct legal interests of the Suburban Municipalities where the Court must consider the reason behind dual-majority voting requirements." (Reply to Pls.' Resp. in Opp'n to Suburban Municipalities' Mot. to Intervene, D.E. # 60, at 5.)

As to permissive intervention, the Suburban Municipalities cited *Doe v. Briley*, No. 3:73-6971, 2007 WL 1345386, at *6 (M.D. Tenn. May 7, 2007), for the principle that permissive intervention is proper where an issue of law in a case which relates to the parties also relates to the intervenors. (*Id.* at 8.) As such, they argued that "the issue of the voting rights requirement for countywide consolidation relates" to both the Suburban Municipalities and the parties, and that their intervention should be permitted. (*Id.*) Additionally, they reiterated that they are not required to assert a common question of law rising to the level required to have standing in the lawsuit and that intervention will not "cause undue delay or prejudice to the existing parties." (Reply to Pls.' Resp. in Opp'n to Town of Arlington's Mot. to Intervene, D.E. # 52, at 12-13.)

The Court held a hearing on these Motions on September 20, 2011. At the hearing, the parties based their legal arguments regarding intervention upon *Town of Lockport*. The Suburban Municipalities argued that the Court should acknowledge the separate issues in the case, as well as the relevant geopolitical distinctions among the parties and the Suburban

Municipalities.  They also identified several specific substantial legal interests in addition to those addressed in their briefs.  They mentioned the 1999 annexation reserve agreements with the City of Memphis, which would be nullified by consolidation of the City and County governments, as well as expenditures which would be made under the reserve agreements and payment of monthly sewer bills.  According to the Suburban Municipalities, these agreements and expenditures provide separate substantial legal interests mandating intervention as of right. The Suburban Municipalities stated that each municipality's government has its own municipal rights, all of which are individual and different under *Lockport*, and that the Suburban Municipalities should be allowed to intervene in the case.

In response, Plaintiffs argued that the Suburban Municipalities seek to intervene in a lawsuit that does not yet exist; they stated that annexation contracts and the Suburban Municipalities' other asserted substantial legal interests are not the focus of the lawsuit. Moreover, Plaintiffs focused the lack of a current proposed charter as distinguishing this case from the situation present in *Town of Lockport*.  Plaintiffs asserted that in the case at bar, the sole legal issues are the Fourteenth and Fifteenth Amendment and Voting Rights Act issues. Additionally, Plaintiffs addressed the Suburban Municipalities' claims for permissive intervention, stating that there are no common questions of law and that there are no facts at issue in the case.  Plaintiffs argued that the question of law was not what would happen to the Suburban Municipalities' charters in the event a consolidation vote succeeds; to the contrary, Plaintiffs reiterated that the sole legal currently issue before the Court is whether the dual-majority method of voting is constitutional.

In reply, the Suburban Municipalities stated that the Court could not resolve the Equal

Protection claim in a vacuum, and because it cannot be known what form the next proposed

metropolitan government charter will take, the Suburban Municipalities have the same

substantial legal interests articulated above which are relevant to the case.  The Suburban

Municipalities pointed out that *Town of Lockport* was not decided in a vacuum, as the Supreme

Court recognized the different individual interests of the municipalities affected by the New

York charter at issue. Additionally, they mentioned that there was no issue with the timeliness of

their motions to intervene, and that it would be advantageous for the Court to have all parties

with substantial legal interests in the litigation before it when analyzing the constitutional issues.

Consequently, the Suburban Municipalities argued that the should be allowed to intervene.

## STANDARD OF REVIEW

### Intervention as of Right

Federal Rule of Civil Procedure 24(a) provides that

> [o]n timely motion, the Court must permit anyone to intervene who: (1) is given
> an unconditional right to intervene by a federal statute; or (2) claims an interest
> relating to the property or transaction that is the subject of the action, and is so
> situated that disposing of the action may as a practical matter impair or impede
> the movant's ability to protect its interest, unless existing parties adequately
> represent that interest.

The Sixth Circuit has interpreted this rule to require a proposed intervenor to establish four

elements:

> (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial
> legal interest in the subject matter of the case; (3) the proposed intervenor's
> ability to protect that interest may be impaired in the absence of intervention; and

9

(4) the parties already before the court may not adequately represent the proposed intervenor's interest.[4]

The proposed intervenor must prove each of the four elements; failure to meet one of them will require the court to deny the motion to intervene.[5]

## Permissive Intervention

Federal Rule of Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Moreover, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

## ANALYSIS

## Intervention as of Right

The Court will address each of the four elements of intervention as of right in turn.

### Timeliness

First, courts in the Sixth Circuit consider five factors in determining the timeliness of an application for intervention as of right:

(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of

---

[4]       *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005).

[5]       *Id.*

their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.[6]

While no single factor is dispositive, courts determine whether a motion to intervene is timely by evaluating it in the "context of all relevant circumstances."[7]

After considering the five factors delineated in *Zelman*, the Court finds the Suburban Municipalities' Motions to Intervene to be timely. When the Town of Arlington originally filed its Motion in March of 2011, discovery in the case had not yet commenced. Moreover, the City of Bartlett, the Town of Collierville, the City of Germantown, and the City of Millington filed their Motion in June of 2011, three months later, and although discovery had begun, the case had not progressed substantially into the merits of the controversy. The current scheduling order has set a discovery deadline of January 31, 2012, and dispositive motions are due by March 5, 2012.[8] While there was some delay between the commencement of the lawsuit and the filing of the Motions to Intervene, the delay was not substantial, and the parties would suffer no real prejudice due to that delay. Thus, taking into account all of the relevant circumstances of the case, the Court finds that the Suburban Municipalities have satisfied this element of intervention as of right.

## Substantial Legal Interest

In evaluating whether a proposed intervenor has a substantial legal interest in the subject matter of the litigation, the Sixth Circuit has "opted for a rather expansive notion of the interest

---

[6]        *Blount-HIll v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011).

[7]        *Id.* (quotation omitted).

[8]        (D.E. # 45.)

sufficient to invoke intervention of right."[9]  However, this broad notion "does not mean that any articulated interest will do."[10]  After all, "establishing a substantial legal interest is necessarily fact-specific."[11]  Moreover, a proposed intervenor's general ideological interest in the lawsuit—such as encouraging the government to zealously enforce or uphold some piece of legislation supported by the proposed intervenor—"cannot be deemed substantial."[12]

The Suburban Municipalities point to *Town of Lockport v. Citizens for Community Action at Local Level, Inc.*[13] as requiring their intervention in the case at bar; because the Supreme Court identified distinct interests of the municipalities affected by the charter.  Plaintiffs assert that *Town of Lockport* is distinguishable from the case at bar.  Therefore, the Court will closely examine *Town of Lockport* to determine whether it controls whether the Suburban Municipalities have asserted a substantial legal interest in this case.

In *Town of Lockport*, the New York county of Niagra put a proposed charter to a referendum vote.[14]  The referendum procedure was similar to that challenged in the case at bar:

---

[9]    *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007) (quoting *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)).

[10]    *Id.* (citing *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000)).

[11]    *Id.* (quotation omitted).

[12]    *Granholm*, 501 F.3d at 782.

[13]    430 U.S. 259 (1977).

[14]    *Town of Lockport*, 430 U.S. at 262.  The 1972 county charter created the offices of County Executive and County Comptroller and maintained several of the county's existing powers, including its power to "establish tax rates, equalize assessments, issue bonds, maintain roads, and administer health and public welfare services."  *Id.*  The 1972 charter did not explicitly redistribute governmental powers from the cities or towns to the county government.  *Id.*  The contents of the 1974 county charter are not readily apparent from the Supreme Court's opinion.  *See generally id.*

New York's county governments traditionally took the form of a single-branch legislature and exercised general government powers.[15]  Similar governmental powers were also exercised by the county's constituent cities, villages, and towns.[16]  The allocation of those powers could be changed by the dual majority referendum procedures contained in New York's constitution and implemented by its Municipal Home Rule Law.[17]  Those procedures required the county's board of supervisors to submit a proposed charter to a vote for approval, and for the new charter to be adopted, it would need to receive approval from a majority of the voting city dwellers and a majority of the non-city dwellers in the community.[18]

When the 1972 charter was put to a vote using this referendum procedure, a majority of city voters approved the charter, a majority of the non-city voters disapproved the charter, and a majority of those voting in the entire county favored the charter.[19]  After the plaintiffs originally filed suit under 42 U.S.C. § 1983, Niagra County put another charter to referendum in 1974.[20]  The same voting results occurred as with the 1972 charter: a majority of city voters approved the charter, a majority of the non-city voters disapproved the charter, and a majority of those voting

---

[15]        *Id.* at 261.

[16]        *Id.*

[17]        *Id.*

[18]        *Id.* at 261-62.

[19]        *Id.* at 262.

[20]        *Id.* at 263.

in the entire county approved the new charter.[21]  Thus, when the case was again before the district court, a charter had not been adopted using the challenged referendum procedure.[22]

For the purposes of this Order, which confines itself to the issue of intervention, the Court need not address *Town of Lockport*'s holding about the validity of the dual-majority voting requirement.  However, the Supreme Court did address the differing interests held by city and non-city voters, which is relevant to the Court's determination of whether the Suburban Municipalities have a substantial legal interest mandating intervention as of right in the case at bar.  The Supreme Court stated that in the context of annexation proceedings, "the fact that the residents of the annexing city and the residents of the area to be annexed formed sufficiently different interests could be readily perceived."[23]  Additionally, "in terms of recognizing constituencies with separate and potentially opposing interests, the structural decision to annex or consolidate is similar in impact to the decision to restructure county government" in Niagra County.[24]  According to the Supreme Court, "the real and long-term impact of a restructuring of local government is felt quite differently by the different county constituent units that in a sense compete to provide similar governmental services."[25]  Thus, the Supreme Court appeared to recognize that, in the face of an imminent restructuring of a county's different constituent units, each constituent unit would have perceptibly different interests in consolidation.

---

[21]    *Id.*

[22]    *See id.*

[23]    *Id.* at 271.

[24]    *Id.*

[25]    *Id.* at 272.

14

The Suburban Municipalities would have the Court find a substantial legal interest in the intervention context based on this recognition of each municipalities' separate interests in the governmental consolidation context.  They argue that, because the Supreme Court has recognized that each municipality in a county has a separate, independent interest in annexation proceedings and the consolidation of school districts,[26] the Suburban Municipalities have a substantial legal interest mandating intervention in the case at bar based on their annexation reserve agreements and related expenditures.

However, the current factual situation surrounding this case differs from that in *Town of Lockport*, which had a proposed charter at issue when the suit was before the court.  Here, the referendum involved potential consolidation under a specific proposed charter.  When the referendum failed to pass under the dual majority voting requirement, the proposed charter did not come into existence.  To the Court's knowledge, no other charters have been proposed since the November 2010 referendum failed.  The Suburban Municipalities admit that "any future consolidation votes will be based on a currently unknown charter."[27]  Thus, there are no potential charters which would affect or trigger the alleged substantial legal interests raised by the Suburban Municipalities.

The Court can find no other substantial legal interest possessed by the Suburban Municipalities which would justify intervention.  While the Suburban Municipalities may have an interest in "maintaining the dual majority requirements" of the Tennessee provisions at issue,

---

[26]     *See id.* at 271-72.

[27]     (Town of Arlington's Reply to Pls.' Resp. in Opp'n to Town of Arlington's Mot. to Intervene, D.E. # 52, at 6.)

that interest is adequately protected by the Tennessee Attorney General.  It is also no more substantial than the legal interest of other Tennessee citizens and municipalities in maintaining the validity of Tennessee's constitutional and statutory provisions.  Filings by proposed intervenors without a substantial legal interest in the case would likely amount to ideological support for Defendants, and mere ideological cheerleading is insufficient to create a substantial legal interest under Rule 24(a).  The sole issues before the Court at this time are the constitutionality of Tennessee Constitution Article XI § 9 and Tenn. Code Ann. § 7-2-106.  Because the Suburban Municipalities have no substantial legal interest in the outcome of this litigation, the Court finds that the Suburban Municipalities have failed to satisfy this element of the intervention as of right.

**Impairment**

A proposed intervenor "must show only that impairment of its substantial legal interest is possible if intervention is denied."[28]  This burden on the proposed intervenor is minimal.[29]

Based on the Court's holding that the Suburban Municipalities do not have a substantial legal interest in the constitutional issues of this case, it is not possible for that substantial legal interest to be impaired if the Court denies intervention.  While the Court recognizes that the Suburban Municipalities' burden as to this element is minimal,[30] they cannot meet that burden without first demonstrating that they have a substantial legal interest which could be impaired.

---

[28]     *Miller*, 103 F.3d at 1247 (citation omitted).

[29]     *Id.*

[30]     *See Miller*, 103 F.3d at 1247.

Thus, the Court finds that the Suburban Municipalities have failed to satisfy this element of intervention as of right.

## Inadequate Representation

Applicants for intervention bear the burden of proving that they are inadequately represented by a party to the suit.[31]  This burden is minimal because the proposed intervenor need only show that there is a potential for inadequate representation.[32]  However, applicants for intervention must overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit.[33]  A proposed intervenor can overcome this presumption by showing that his requested relief differs from that of the parties, that she intends to make separate arguments unique to the intervenor, or that the parties would fail to present those separate arguments to the court.[34]

The Suburban Municipalities have failed to show the potential for inadequate representation of their interests by Defendants.  The Suburban Municipalities argue that, because Defendants do not have the same interest in their status as separate municipalities, Defendants will not approach the defense in this case in the same way as the Suburban Municipalities would.[35]  However, the Court finds that Defendants can adequately represent the interests of the Suburban Municipalities without their intervention at this time.  The main issues in this case are

---

[31]     *Meyer Goldberg, Inc. v. Goldberg*, 717 F2d 290, 293 (6th Cir. 1983).

[32]     *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999).

[33]     *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987).

[34]     *See United States v. Michigan*, 424 F.3d 438, 444 (6th Cir. 2005).

[35]     (Town of Arlington's Mem. in Supp. of Mot. to Intervene, D.E. # 42-1, at 6.)

constitutional, and the Suburban Municipalities do not identify separate constitutional arguments that they would make to the Court.  As such, the Court finds that the Suburban Municipalities have not met their burden as to the fourth element of intervention as of right.

Accordingly, because the Suburban Municipalities have failed to satisfy the requirements of the second, third, and fourth elements necessary to intervene as of right, their Motions to Intervene as of right are **DENIED.**

**Permissive Intervention**

Rule 24(b) requires a proposed intervenor to establish that the motion for intervention is timely and to allege at least one common question of law or fact.[36]  Rule 24(b) does not require a "stringent showing" that the proposed intervenor has a "strong nexus of common fact or law."[37]  After the proposed intervenor establishes those two requirements, district courts balance the undue delay and prejudice to the original parties, if any, along with any other relevant factors to determine whether intervention should be allowed.[38]

The Court agrees with Plaintiffs' assertion that there are no issues of fact in dispute in this case.[39]  Rather, both issues in this case are purely legal.  Additionally, as discussed above, the Court finds that the Town of Arlington's Motion to Intervene and the Motion to Intervene filed by the City of Bartlett, the Town of Collierville, the City of Germantown, and the City of Millington are timely.  Thus, for the Court to exercise its discretion to permit the Suburban

---

[36]     *Michigan*, 424 F.3d at 445.

[37]     *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 164 (6th Cir. 1987).

[38]     *Id.*

[39]     (Pls.' Resp. in Opp'n to Town of Arlington's Mot. to Intervene, D.E. # 46, at 10.)

18

Municipalities to intervene as defendants, they must show that their defenses share a common question of law with those of the parties.

The Suburban Municipalities cite to *Doe v. Briley*, a case from the Middle District of Tennessee, as standing for the premise that an intervenor need only show that an issue of law in a case relates to both the parties and the intervenor to establish the existence of a common question of law.[40]  However, the Court disagrees with the Suburban Municipalities' interpretation of *Briley*.  In *Briley*, the Middle District granted a news channel's and a newspaper's motions to intervene in a case involving public access to arrest records.[41]  Both proposed intervenors had moved for permissive intervention as an alternative to intervention as of right, and the court granted both proposed intervenors' motions to intervene as of right and permissively.[42]  The court thoroughly analyzed the proposed intervenors' motions to intervene as of right before granting them.[43]  Then, after two brief paragraphs of analysis, the court concluded that "even if the parties had not made an adequate showing for intervention as of right, the court would grant both motions under Rule 24(b)(2)."[44]  The court stated that "[o]ne important issue of law *relating to* all of the parties in this case is whether the plaintiff has a constitutional right of privacy in the arrest records."[45]

---

[40]     *Doe v. Briley*, No. 3:73-6971, 2007 WL 1345386, at *6 (M.D. Tenn. May 7, 2007).

[41]     *Id.* at *1.

[42]     *Id.* at *1-*6.

[43]     *Id.* at *1-*5.

[44]     *Id.* at *6.

[45]     *Id.* (emphasis added).

The Suburban Municipalities would have the Court take these two italicized words and find a common question of law by relating the Suburban Municipalities' unripe issues of law to the ripe constitutional issues in this case. The Court declines to do so. The Court will evaluate whether the Suburban Municipalities have alleged a defense with a common question of law based on the legal standard articulated above.

The Suburban Municipalities appear to argue that the validity of the Tennessee constitutional and statutory provisions at issue relates to their statuses as separate municipalities, and that relation creates a common question of law as to the defense of this case.[46] They also argue that the "dual majority voting requirements for county consolidation referenda are related to the Suburban Municipalities" and thus that the requirements raise a common question of law in the defense of this case.[47] Plaintiffs argue that the Suburban Municipalities do not mention the Complaint or any counterclaims or affirmative defenses they may have and that "it is impossible to even discern what 'common question of law' [the Suburban Municipalities are] asserting other than that the current Consolidation Clause is constitutional."[48]

While the Suburban Municipalities raise unripe questions of law as to the effect of an as-yet nonexistent charter on their separate interests as municipalities if a vote to consolidate the governments of the City of Memphis and Shelby County passes, they do not show a strong nexus of law as to the defense of the constitutionality of the Tennessee constitutional and statutory

---

[46]     (Town of Arlington's Mem. in Supp. of Mot. to Intervene, D.E. # 42-1, at 7; Suburban Municipalities' Mem. in Supp. of Mot. to Intervene, D.E. # 53-3, at 12.)

[47]     (Suburban Municipalities' Mem. in Supp. of Mot. to Intervene, D.E. # 53-3, at 12.)

[48]     (Pls.' Resp. in Opp'n to Town of Arlington's Mot. to Intervene, D.E. # 46, at 10.)

provisions at issue here.  The Suburban Municipalities fail to identify how their defense of the provisions at issue would differ from that of Defendants' defense, and they do not allege that they would raise additional defenses not pursued by Defendants.  Instead, the Suburban Municipalities' Motions to Intervene focus on their individual interests as separate municipalities and their right to defend those interests rather than their interest in the constitutionality of the provisions at issue.  Were the validity of a municipal ordinance promulgated by one of the Suburban Municipalities at issue, the Court would be confronted with a different case.  However, based on the narrow constitutional issues present in this case, the Court finds that the Suburban Municipalities have not demonstrated a common question of law in the defense of the provisions at issue to permit their intervention in this case.

Even if the Suburban Municipalities could present a common question of law, the Court, in its balancing of the undue delay and prejudice to the parties and other relevant factors, would deny the Suburban Municipalities' motion to intervene.  While the parties would not be prejudiced if the Court permitted the Suburban Municipalities to intervene, other relevant factors tip the scales against permitting intervention.  The underlying case now consists wholly of claims under the federal Constitution that Tennessee constitutional and statutory provisions are unconstitutional.  It is the province of the Attorney General of the State of Tennessee to defend the constitutionality of state statutes;[49] municipalities do not have an interest in the validity of a regulation, ordinance, or statute independent from or greater than that of the rest of the citizens of Tennessee.  The Tennessee Attorney General can adequately protect the Suburban Municipalities' interest in the constitutionality of the provisions at issue.

---

[49].     *See Stutts v. Ford Motor Co.*, 574 F. Supp. 100, 101 (M.D. Tenn. 1983).

Moreover, allowing the Suburban Municipalities to intervene would result in duplicative filings on complex constitutional issues.  Such filings would amount to little more than ideological and political cheerleading, and these type of "me too" filings would clutter and clog the docket.  These relevant factors would persuade the Court to deny the Suburban Municipalities' Motions for Intervention even if they could articulate a defense with a common question of law.

Thus, for the foregoing reasons, the Suburban Municipalities' Motions for Permissive Intervention are **DENIED**.

## <u>CONCLUSION</u>

For the reasons set forth above, the Town of Arlington's Motion to Intervene is **DENIED**.  Additionally, the Motion to Intervene filed by the City of Bartlett, the Town of Collierville, the City of Germantown, and the City of Millington is **DENIED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: October 21, 2011.