IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| **HARRISON KERR TIGRETT** | ) | |
| **MAXINE SMITH, RUSSELL** | ) | |
| **SUGARMON, REGINA M.** | ) | |
| **SUGARMON, JAMES WESLEY** | ) | |
| **GIBSON II, KATHY BUCKMAN** | ) | |
| **GIBSON, MIKE CARPENTER, and** | ) | |
| **MARTAVIOUS JONES,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-2724-STA-tmp** |
| | ) | |
| **ROBERT E. COOPER, JR., in his** | ) | |
| **Official Capacity as Attorney General of** | ) | |
| **the State of Tennessee, TRE HARGETT,** | ) | |
| **in his Official Capacity as Secretary of** | ) | |
| **State of the State of Tennessee,** | ) | |
| **TENNESSEE DEPARTMENT OF** | ) | |
| **STATE: DIVISION OF ELECTIONS,** | ) | |
| **SHELBY COUNTY ELECTION** | ) | |
| **COMMISSION, WILLIAM GIANNINI,** | ) | |
| **MYRA STILES, J.H. JOHNSON,** | ) | |
| **ROBERT D. MEYERS, and STEVE** | ) | |
| **STAMSON, in their official capacities as** | ) | |
| **members of the Shelby County Election** | ) | |
| **Commission,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

**ORDER GRANTING IN PART SUBURBAN MUNICIPALITIES' MOTION FOR
RECONSIDERATION**

_____

Before the Court is the Motion for Reconsideration or to Alter or Amend the Judgment of

the Court in its Order Denying the Suburban Municipalities' Motions to Intervene (D.E. # 71),

filed on November 18, 2011, by the Town of Arlington ("Arlington"), the City of Bartlett

("Bartlett"), the Town of Collierville ("Collierville"), and the City of Germantown

("Germantown") (collectively "Suburban Municipalities"). Plaintiffs filed a Response in

Opposition to the Suburban Municipalities' Motion for Reconsideration (D.E. # 72) on

November 30, 2011. Defendants filed a Response in Support of the Suburban Municipalities'

Motion for Reconsideration (D.E. # 75) on December 14, 2011. The Suburban Municipalities

filed a Reply (D.E. # 78) on December 23, 2011. For the following reasons, the Suburban

Municipalities' Motion is **GRANTED IN PART**.

## BACKGROUND

On March 29, 2011, Arlington filed a Motion to Intervene (D.E. # 42), and on April 15,

2011, Plaintiffs filed a Response in Opposition (D.E. # 46). On June 6, 2011, Bartlett,

Collierville, Germantown, and the City of Millington ("Millington")[1] collectively filed a Motion

to Intervene (D.E. # 53), and on June 22, 2011, Plaintiffs filed an additional Response in

Opposition (D.E. # 54). On September 20, 2011, the Court held oral argument on the Suburban

Municipalities' Motions to Intervene. Following oral argument, the Court entered an Order

denying the Suburban Municipalities' Motions on October 21, 2011. (D.E. # 68.)

The Suburban Municipalities advance three reasons for the Court to reconsider its Order.[2]

First, they assert that the Court's ruling that they did not have a substantial legal interest in this

---

[1]     As Plaintiffs point out, Millington is not a party to the Suburban Municipalities'
Motion to Reconsider. Therefore, the Court finds that Millington has not challenged the Court's
Order on the Motions to Intervene.

[2]     The Court also notes that the Suburban Municipalities did not ask the Court to
reconsider its ruling on the issue of permissive intervention.

case was based on an erroneous interpretation of *Town of Lockport*.[3]  (Mot. for Recons., D.E. #
71-1, at 3.)  The Suburban Municipalities note that *Town of Lockport* "turned upon the
recognition that an Equal Protection analysis must depend, in the first instance, on the
determination whether there are separate and distinct relevant geopolitical entities at issue."  (*Id.*
at 4.)  They point out that the Supreme Court did not view the Town of Lockport's interest in a
vacuum but instead considered its issues and interests along with the challenge to the
constitutionality of the voting requirement.  (*Id.*)  The Suburban Municipalities focus on the
Supreme Court's passage, often quoted in this case, recognizing the differing interests of towns
and cities faced with a consolidation of governments within a county.  (*Id.*)  The Suburban
Municipalities assert that they have an interest in this lawsuit challenging the Tennessee
constitution's dual-majority voting requirement despite the lack of a pending charter.[4]  Thus, the
Suburban Municipalities state that they have a substantial legal interest in the case.

Second, the Suburban Municipalities argue that as the Court has already found that their
Motions to Intervene were timely, if the Court were to find that they had a substantial legal
interest in the case, the other two elements of mandatory intervention—the impairment of the

_____

[3]     *Town of Lockport v. Citizens for Cmty. Action at Local Level, Inc.*, 430 U.S. 259
(1977).

[4]     The Suburban Municipalities also argue that the Court mischaracterized one of
their arguments.  They assert that the Court stated that they argued in favor of intervention
because of the "distinct interests of the municipalities affected by the charter."  (*Id.* at 5.)  The
Court's statement focused upon the Supreme Court's identification of distinct municipal interests
in *Town of Lockport* rather than an articulation of the Suburban Municipalities' argument.
Regardless, the Suburban Municipalities assert that their citation of *Town of Lockport* was an
attempt to "point out to the Court that . . . the Equal Protection analysis in this context cannot be
conducted in a vacuum, ignoring the distinct interests that different geopolitical entities maintain
in this context."  (*Id.*)

proposed intervenors' ability to protect their substantial legal interest without intervention and the lack of adequate representation by the parties already before the court—would also be met. (*Id.* at 5-6.)  In support of this argument, the Suburban Municipalities aver that their separate and distinct interests would be impaired if they are prohibited from intervening.  (*Id.*)  Additionally, the Suburban Municipalities argue that the special interests of their individual voters would not be adequately protected by the current Defendants in the case, as Defendants do not have the same interest in protecting the Suburban Municipalities' contractual rights.  (*Id.* at 6.)

Third, the Suburban Municipalities assert a rather novel argument: they would have the Court extend the "capable of repetition yet evading review" exception to the mootness doctrine to the Court's evaluation of their substantial legal interest.  (*Id.* at 7.)  Under the law of the case, the Suburban Municipalities assert that because the Court did not find that Plaintiffs' Complaint was mooted by the defeat of the proposed charter, their substantial legal interests triggered by the proposed charter were not mooted.  (*Id.* at 7-8.)  Indeed, the Suburban Municipalities state that

> [t]he Court held that the lack of a specific charter due to the November 2010 electoral defeat of the proposed charter did not render the case moot.  Therefore, it necessarily follows that the suburban municipalities have the same legal interest now with regard to any charter that they did with regard to the specific proposed charter which was the subject of this case initially.

(*Id.* at 8.)  Notably, the Suburban Municipalities did not raise this argument in any of their briefing in the Motions to Intervene.

In response, before addressing the Suburban Municipalities' three objections to the Court's order, Plaintiffs point out that although none of the Sixth Circuit's three conditions for granting a Motion for Reconsideration apply, the Suburban Municipalities appear to argue that

the Court's order was clearly erroneous.[5] (Pls.' Resp., D.E. # 72, at 3.)  Plaintiffs submit that

this argument "is unfounded."  (*Id.*)

   First, Plaintiffs aver that "[t]o date, the Suburban Municipalities still have not proffered,

nor can they, a substantial interest to warrant intervention in this action."  (*Id.* at 4.)  Plaintiffs

assert that the Suburban Municipalities have misinterpreted *Town of Lockport* by losing sight of

the fact that the Supreme Court did not rule on intervention under Rule 24(b) in *Town of*

*Lockport*; indeed, Plaintiffs submit that "the Suburban Municipalities' misconstruction of *Town*

*of Lockport* is underscored by [their] assertion that *Town of Lockport* 'set forth' an 'appropriate*

standard for intervention.'"  (*Id.*)  Plaintiffs state that this Court did not misconstrue *Town of*

*Lockport* and that the Court should "reaffirm its well reasoned ruling."  (*Id.*)

   Second, Plaintiffs reiterate their standing argument and submit that "the Suburban

Municipalities have no standing to intervene for the purposes of enforcing the dual-majority

voting requirement."  (*Id.* at 5.)  They also state that even if the Court reconsiders its order and

finds that Plaintiffs have a substantial legal interest in the case, the Suburban Municipalities'

interests will be adequately represented by Defendants and that the defense of the statute and

Tennessee constitutional provision at issue will not be impaired by their absence from the suit.

(*Id.*)

   Finally, Plaintiffs aver that the Court's order is consistent with previous rulings in the

case, and that "the Court's ruling denying Defendants' Motion to Dismiss has no relevance to the

---

   [5]  In their Response in Support, Defendants similarly state that "the Suburban
Municipalities assert that a clear error of law exists in that this Court mistakenly interpreted the
Supreme Court's rationale in ruling that the Town of Lockport had [a] substantial legal interest
sufficient to intervene of right in the [*Town of*] *Lockport* case."  (Defs.' Resp. in Supp., D.E. #
75, at 2.)

Suburban Municipalities' intervention as of right".  (*Id.* at 5-6.)  Plaintiffs point out that when the Court reached its decision to apply the "capable of repetition yet evading review" exception to the mootness doctrine, the Court "relied on supporting affidavits indicating efforts to seek a referendum vote on a metropolitan form of government in the future."  (*Id.* at 6.)  Because the Court's previous order was limited to whether the challenged constitutionality of the dual-majority voting requirement could recur in the future, Plaintiffs argue that "the Court's previous order is not even tangentially related to whether the Suburban Municipalities possess a substantial legal interest sufficient to intervene as of right in this action."  (*Id.*)

Also in response, Defendants filed a Response in Support of the Suburban Municipalities' Motion for Reconsideration.[6]  (Defs.' Resp. in Supp., D.E. # 75.)  Defendants argue that, in *Town of Lockport*, "the existence of a charter was relevant only for purposes of the relief requested by the plaintiffs," not for any municipalities' ability to intervene in the case under Rule 24.  (*Id.* at 2-3.)  Thus, Defendants submit that in the case at bar, "the existence of a proposed charter is irrelevant" in light of the relief requested by Plaintiffs; furthermore, Defendants question whether this case remains a live controversy under Article III if substantial legal interests emanate only from a proposed charter, as there is no proposed charter at this time. (*Id.* at 3.)  They then argue that "there is nothing in either the district court's opinion or the Supreme Court's opinion to suggest that intervention by the Town of Lockport was premised upon the existence of a proposed charter."  (*Id.*)

---

[6]     The Court notes that Defendants neither filed any Memorandum in Support of the Suburban Municipalities' Motions to Intervene nor appeared before the Court at the hearing on the Suburban Municipalities' Motions to Intervene.

Defendants also focus upon one of Plaintiffs' arguments in Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss.  Defendants point out that, in their Response, Plaintiffs "acknowledged that there is a need to develop a factual record as to the differing interests of the city and county voters."  (*Id.* at 5.)  According to Defendants, this acknowledgment demonstrates that "intervention by the Suburban Municipalities is not only appropriate but necessary, as the Suburban Municipalities are uniquely situated to identify their residents' and voters' special interests."  (*Id.* at 5-6.)  Defendants point to the Attorney General's inability to "identify and advocate for the special interests of the residents of the Suburban Municipalities" as another reason further supporting intervention.  (*Id.* at 6-7.)

In reply, the Suburban Municipalities heavily rely on Defendants' Response in Support and assert that the Court clearly erred in its interpretation of *Town of Lockport*.  (Suburban Municipalities' Reply, D.E. # 78, at 3.)  Next, they argue that Defendants' Response in Support and an expert report produced by Plaintiffs constitute newly available evidence which was not before the Court when it ruled on the initial Motions to Intervene.  (*Id.* at 4-5.)  First, the Suburban Municipalities argue that the expert report demonstrates that whether the Suburban Municipalities have separate and distinct interests will be "a primary consideration in this case." (*Id.* at 4.)  Second, they argue that Defendants' admission that the State cannot adequately protect the Suburban Municipalities' interests in light of their statutorily limited authority requires their intervention to protect those interests.  (*Id.* at 5.)  The Suburban Municipalities conclude that "denying intervention [would be] an erroneous application of [*Town of*] *Lockport*, resulting in a manifest injustice to the Suburban Municipalities."  (*Id.* at 6.)

## STANDARD OF REVIEW

While the "Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders, . . . [d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment."[7]  The Sixth Circuit has recognized that "[t]raditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice."[8]

Moreover, the Western District of Tennessee has enacted Local Rule 7.3 ("L.R. 7.3"), which governs Motions for Revision of Interlocutory Orders.  L.R. 7.3 identifies Rule 54(b) as the relevant procedural rule under which to bring a Motion for Reconsideration, and it also notes that "[m]otions to reconsider interlocutory orders are not otherwise permitted."[9]  In addition to the Sixth Circuit's requirements, the Western District of Tennessee also requires Motions for Reconsideration to specifically show one of three elements:

> (1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or (2) the occurrence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.[10]

---

[7]     *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (quotation omitted).

[8]     *Id.* (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

[9]     L.R. 7.3(a).

[10]    L.R. 7.3(b).

Notably, L.R. 7.3 prohibits parties' Motions for Reconsideration from "repeat[ing] any oral or written argument made by the movant in support of or in opposition to the interlocutory order that the party seeks to have revised."[11]

## ANALYSIS

Federal Rule of Civil Procedure 24(a) provides that

> [o]n timely motion, the Court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Sixth Circuit has interpreted this rule to require a proposed intervenor to establish four elements:

> (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the court may not adequately represent the proposed intervenor's interest.[12]

The proposed intervenor must prove each of the four elements; failure to meet one of them will require the court to deny the motion to intervene.[13]   The Court has already held that the Suburban Municipalities' Motions to Intervene were timely; therefore, the Court will not revisit that specific element.  However, in light of the assertions contained in Defendants' Response in Support and the Court's ruling on Defendants' Motion to Dismiss, the Court finds that

---

[11]    L.R. 7.3(c).

[12]    *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005).

[13]    *Id.*

reconsideration of its prior order on intervention is merited.  The Court will address each of these separate grounds for reconsideration in turn.

First, Defendants' position regarding the Suburban Municipalities' intervention was not before the Court when it initially ruled on the Motions to Intervene.  Defendants' assertion that the Suburban Municipalities "are uniquely situated to identify their residents and voters' special interests" speaks directly to the fourth element of intervention as of right: whether the parties already before the court may not adequately represent the proposed intervenor's interest.[14] Moreover, Defendants argue that Tenn. Code Ann. § 8-6-109 limits their representation to state officials and state entities; as the Suburban Municipalities are neither state officials nor state entities, Defendants would necessarily be unable to represent them or their interests.  Although section 8-6-109(b)(9) requires the Attorney General "[t]o defend the constitutionality and validity of all legislation of statewide applicability . . . enacted by the general assembly except in those instances where the [A]ttorney [G]eneral . . . is of the opinion that such legislation is not constitutional . . . ,"[15] and section 8-6-109(b)(10) gives the Attorney General the duty "[t]o exercise discretion to defend the constitutionality and validity of all private acts and general laws of local application enacted by the general assembly[, but] a sufficient adversary relationship must exist before the discretion not to defend the constitutionality of all legislation of local application may be exercised,"[16] the Court accepts the Attorney General's statement that its

---

[14]     *Id.*

[15]     Tenn. Code Ann. § 8-6-109(b)(9).

[16]     *Id.* § 8-6-109(b)(10).

office would be unable to represent "the interests of the residents and voters of the Suburban Municipalities."[17]

Based on this statement, the Court finds that the fourth prong of intervention as of right, that the proposed intervenors' interests would not be adequately represented by the parties already before the Court, is satisfied. Additionally, because Defendants have stated that they do not have the authority to represent the Suburban Municipalities' interests in this case, the third prong of intervention as of right is satisfied: the Suburban Municipalities' ability to protect their interests would likely be impaired without their intervention.

Finally, the Court turns to the second prong of intervention as of right: whether the proposed intervenor has a substantial legal interest in the subject matter of the case. In its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, the Court allowed Plaintiffs' Equal Protection claims for both race-based and residency-based vote dilution and vote dilution in violation of the Voting Rights Act to go forward. Consequently, any substantial legal interests possessed by the Suburban Municipalities would need to be tied to these claims. As entities, the Suburban Municipalities do not have a race; therefore, they do not have a substantial legal interest in Plaintiffs' race-based Equal Protection claim or the Voting Rights Act claim. Accordingly, the sole way that the Suburban Municipalities could intervene in this case would be if they have a substantial legal interest in Plaintiffs' residency-based vote dilution Equal Protection claim.

As the parties will be conducting discovery on Plaintiffs' residency-based vote dilution Equal Protection claim, their discovery will likely include an investigation into "the differing

---

[17]     (Defs.' Resp. in Supp., D.E. # 75, at 6.)

interests of city and non-city voters in the adoption of a new county charter."[18]  Accordingly, the Court finds that the Suburban Municipalities have a substantial legal interest in participating in this specific claim.  Therefore, the Court finds that the Suburban Municipalities have satisfied all four requirements of intervention as of right, and they will be permitted to intervene in this action.

However, the Suburban Municipalities' substantial legal interest in this case is limited to Plaintiffs' residency-based vote dilution Equal Protection claim.  They have no substantial legal interest in the race-based vote dilution Equal Protection claim, nor do they have a substantial legal interest in the Voting Rights Act claim.  In their Motion for Reconsideration, the Suburban Municipalities couch their arguments in terms of their substantial legal interests as mentioned in *Town of Lockport*, and the other briefs before the Court tend to focus on this limited aspect of Plaintiffs' Equal Protection claim.  Therefore, the Court finds that the Suburban Municipalities have not demonstrated a substantial legal interest in Plaintiffs' race-based vote dilution Equal Protection claim or the Voting Rights Act claim.  To hold otherwise and permit the Suburban Municipalities to intervene in the other remaining claims would be to akin to saying that any individual, municipality, or entity in the state of Tennessee would have a substantial legal interest in the constitutional issues remaining in this case.  The Court will not adopt such a broad interpretation of the phrase "substantial legal interest."

Accordingly, the Court finds that the Suburban Municipalities have satisfied the requirements of intervention as of right solely as it relates to Plaintiffs' residency-based vote dilution Equal Protection claim.  Therefore, their intervention will be limited in scope so as to

---

[18]       *Town of Lockport*, 430 U.S. at 271.

permit their participation in this sole claim.  Thus, the Suburban Municipalities' Motion for

Reconsideration is **GRANTED IN PART**.

**CONCLUSION**

For the foregoing reasons, the Suburban Municipalities' Motion for Reconsideration is

**GRANTED IN PART**.

**IT IS SO ORDERED.**


**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: March 2, 2012.